## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mohammad Tlili and Dina Irace | : | |
| Individually, and h/w | : | |
| Plaintiffs, | : | No. 10-CV-1747 |
| | : | |
| v. | : | |
| | : | |
| Mercury Insurance Company of Florida, | : | |
| Mercury General Corporation, | : | |
| and | : | |
| John Does 1-10 | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this          day of                    , 2011, upon consideration of the

Defendants', Mercury Insurance Company of Florida and Mercury General Corporation, Motion

for Motion for Summary Judgment, and the response thereto, it is hereby ORDERED and

DECREED that:

1)      the Motion is GRANTED.

2)      Defendants, Mercury Insurance Company of Florida and Mercury General

Corporation did not breach the insurance policy and did not act in bad faith in investigating and

denying the claim.

3)      Plaintiffs breached the insurance policy, violated 18 Pa.C.S.A. § 4117, and made

fraudulent and/or negligent misrepresentations.

4)      Plaintiffs are to pay Defendants', Mercury Insurance Company of Florida and

Mercury General Corporation, reasonable attorney fees and costs incurred in investigating the

claim and in defending this action.

BY THE COURT:

_____
                                    U.S.D.J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mohammad Tlili and Dina Irace | : | |
| Individually, and h/w | : | |
| Plaintiffs, | : | No. 10-CV-1747 |
| | : | |
| v. | : | |
| | : | |
| Mercury Insurance Company of Florida, | : | |
| Mercury General Corporation, | : | |
| and | : | |
| John Does 1-10 | : | |
| Defendants. | : | |

### DEFENDANTS', MERCURY INSURANCE COMPANY OF FLORIDA AND MERCURY GENERAL CORPORATION, MOTION FOR SUMMARY JUDGMENT

Defendants, Mercury Insurance Company of Florida and Mercury General Corporation (hereinafter "Mercury"), by and through by and through Counsel Marshall Dennehey Warner Coleman & Goggin, respectfully submit this Motion for Summary Judgment on the Causes of Action asserted by Plaintiff and, also, on their Counterclaim and in support thereof aver as follows:

1.      This action arises out of Mercury's denial of Plaintiff, Dina Irace's, insurance claim with respect to a stolen vehicle.

2.      In their Complaint, plaintiffs allege that they own the vehicle that is the subject of this action and that Marouen Tlili, their brother-in-law was using the vehicle with plaintiffs permission when it was stolen.

3.      Mercury's investigation of the claim revealed that plaintiff, Dina Irace, did not own the vehicle; plaintiff, Dina Irace, did not have an insurable interest in the vehicle; and

plaintiff Dina Irace made material misrepresentations during the presentation of the claim concerning her marriage to Marouen Tlili and her ownership of the vehicle.

4.     By accepting the insurance policy, plaintiff, Dina Irace, agreed and represented that she owned the vehicle.

5.     The policy only provides coverage if he vehicle is owned by plaintiff, Dina Irace.

6.     The policy expressly excludes coverage for any loss where there occurs any material misrepresentation, fraud, or concealment of material facts in the presentation of a claim.

7.     The policy provides that Mercury may deny coverage if there is an intentional material misrepresentation by plaintiff, Dina Irace.

8.     The expert retained by Mercury to examine the vehicle after it was recovered determined that that a key, with the correct transponder value as well as the correct infrared signal, would have been needed to start and operate the vehicle.  Marouen Tlili had the only key and still had possession of it and, therefore, the Vehicle had not been stolen because there was no way to defeat the 'rolling code' transponder immobilizer system in the Vehicle by traditional theft means.

9.     Based on its investigation of the claim and an examination of the vehicle, Mercury denied coverage for the claim pursuant to the terms of the insurance policy issued to plaintiff, Dina Irace.

10.     Based on its investigation of the claim, an examination of the vehicle, and the applicable provisions of the policy, Mercury had reasonable bases to disclaim coverage.

11.     Based on its investigation of the claim, an examination of the vehicle, and the applicable provisions of the policy, plaintiff, Dina Irace, breached the policy, violated 18 Pa.C.S.A. § 4117, and made fraudulent and/or negligent misrepresentations.

12.     Mercury, therefore, requests that, pursuant to Federal Rule of Civil Procedure 56, the Court enter an Order granting Summary Judgment in its favor and finding that it did not breach the insurance policy issued to plaintiff, Dina Irace, and that it denial of coverage was reasonable

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

By: _____

ROBERT W. JOZWIK, ESQUIRE

Attorneys for Defendants,
Mercury Insurance Company of Florida and
Mercury General Corporation

Dated: 8.2.11

01/7034644.v1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mohammad Tlili and Dina Irace          :
Individually, and h/w                   :
                     Plaintiffs,          :          No. 10-CV-1747
                                             :

      v.                                    :
                                             :

Mercury Insurance Company of Florida,   :
Mercury General Corporation,            :
      and                                  :
John Does 1-10                          :
                       Defendants.          :

## DEFENDANTS', MERCURY INSURANCE COMPANY OF FLORIDA AND MERCURY GENERAL CORPORATION, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Mercury Insurance Company of Florida and Mercury General Corporation (hereinafter collectively "Mercury"), by and through by and counsel Marshall Dennehey Warner Coleman & Goggin, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.    INTRODUCTION

This action arises out of Mercury's denial of coverage for a insurance claim submitted by plaintiffs with respect to a stolen vehicle.  Plaintiffs contend that Mercury breached the insurance policy issued to Dina Irace and, also, acted in bad faith in investigating and denying coverage for the claim.

At the outset, this Court must recognize that plaintiffs **do not own** the vehicle that is the subject of the claim and this action.  Not only did plaintiffs misrepresent their ownership of the vehicle during the presentation of the claim to Mercury, they are continuing that misrepresentation on this Court by alleging that they owned the vehicle and that their brother-in-

law was using it with their permission when it was allegedly stolen. Such egregious conduct cannot be countenanced by the Court. Summary judgment, therefore, should be entered in favor of Mercury and plaintiffs' action should be dismissed with prejudice.

In addition, Mercury contends that its denial of coverage was proper because its investigation determined, and the undisputed facts demonstrate, that Dina Irace did not have an insurable interest in the stolen vehicle, plaintiffs did not own the vehicle, and she made knowingly material representations in the presentation of the claim. Therefore, summary judgment should be granted in favor of Mercury on plaintiffs' Breach of Contract and Bad Faith claims, and on Mercury's Counterclaim for Breach of Contract, Violation of 18 Pa. C.S. §4117, Fraud, and Negligent Misrepresentation.

## II.   **BACKGROUND**

Mercury submits that the following background is relevant to the disposition of this Motion.

### A.   **The First Amended Complaint**

On August 4, 2010, Mohamed Tlili and Dina Irace, as husband and wife, filed a First Amended Complaint against Mercury alleging claims based on breach of contract and bad faith insurance practices. Plaintiffs allege that Mercury issued an automobile insurance policy to them. Plaintiffs also allege that they owned a 2000 Mercedes Benz S430 that was an insured vehicle under the policy issued by Mercury. Plaintiffs further allege that on September 9, 2008, their brother-in-law, Marouen Tlili ("Marouen"), was operating the Vehicle in Philadelphia with their permission and that the Vehicle had been stolen from the location where he had parked it. Plaintiffs reported the theft to Mercury.

**B.     Background On Stolen Vehicle And Information Obtained Through Mercury's Investigation Of The Claim**

Upon being notified of the theft of a purported insured vehicle, Mercury commenced an investigation that included obtaining recorded statements, conducting examinations under oath ("EUO"), examining the Vehicle, and collecting other documents and information, all of which is summarized next.

In November, 2007, Marouen purchased a 2000 Mercedes Benz model S 430 with a vin number of WDBNQ70J5YA023779 (hereinafter the "Vehicle") at an auction for $10,500.00. See Exhibit "A". The Vehicle was solely titled in the name of Marouen. See Exhibit "B".

On or about April 11, 2008, plaintiff, Dina Irace, submitted an application for an automobile insurance policy to Mercury as the Named Insured for said policy. See Exhibit "C". In the application, Dina Irace identified "Mohammad Tlili" with a date of birth of March 13, 1976, a driver's license number of 2577870, and a phone number of (267) 528-6299 as her spouse and as a listed driver of the Vehicle. Dina Irace also represented that the Vehicle was registered solely in her name. Based on the application, Mercury issued a Pennsylvania Personal Automobile Policy to Dina Irace, as the Named Insured, with number PAA9010734 and with effective dates of April 11, 2008 through October 11, 2008 ("Policy"). The declarations page to the Policy also listed "Mohamed Tlili" as a driver of the Vehicle. See Exhibit "D".

On June 4, 2008, Dina Irace married Mohamed Safouan Tlili.

On September 9, 2008, the Vehicle was stolen and the theft was reported to the police.

**1.     Police Report and Affidavit of Vehicle Theft**

According to a police report dated September 18, 2008, the Vehicle had been recovered with missing headlights, door panels, and radio. See Exhibit "E". The report also indicates that the owner of the Vehicle is Mohamed Tlili. Id.

On September 19, 2008, Dina Irace submitted an Affidavit of Vehicle Theft to Mercury that contained, in pertinent part, the following information.  See Exhibit "F".  Dina Irace identified "Mohamed Tlili" as her spouse and identified his phone number as (267) 528-6299.  According to the Affidavit, the Vehicle was stolen on September 9, 2008 while located at 3rd and Fitzwater Streets in Philadelphia, Pennsylvania where it had been left there by Mohamed Tlili who was in that area shopping.  Upon returning to the location where the vehicle was parked, Mohamed Tlili discovered that the Vehicle was not there.  The Vehicle was reported stolen to the police.  Prior to being stolen, the Affidavit indicates that the Vehicle was locked with windows up, was equipped with an anti-theft alarm device, and the keys were not left inside.  In addition, the Affidavit provides that the Vehicle had been purchased for $10,500, Dina Irace owned one set of keys, and the key was in her possession.

## 2.   Recorded Statements and EUOs of Mohamed Marouen Tlili

On September 12, 2008, a recorded statement was obtained from Marouen.  See Exhibit "G".  In pertinent part, Marouen provided the following information.  He was born on March 13, 1976, resided at 1310 Amosland Avenue, and his driver's license number is 25778702.  Id. p. 1.  With respect to the date of the alleged theft, Marouen stated that he parked the Vehicle, which he said was his car, on 3rd Street and Fitzwater Street on September 9, 2008 and went shopping and visited a friend.  Id. p. 6.  He returned about two hours later and found that the Vehicle was missing.  Id. p. 7.  After searching for the car because he thought he may have parked it somewhere else, Marouen stated that he called the police.  Id.  He also said that he called his "girlfriend" who came to pick him up before the police officer arrived in response to his call to 911.  Id. p. 8.  Marouen identified his girlfriend as Dina Irace.  Id. p. 9.  Marouen also stated he had purchased the Vehicle at an auction so he made his he had to make his own key, which also

the key controls the alarm in the Vehicle, and the key was in his possession at the time of the recorded statement. Id. pp. 8-9. In addition, Marouen stated the he was the registered owner of the Vehicle and that he paid approximately $13,000 for it. Id. pp. 14-15. The last time that Marouen serviced the vehicle was approximately six months prior to the loss. Id. p. 17.

On November 10, 2008, another recorded statement was taken from Marouen. See Exhibit "H". Initially, Marouen confirmed his birthday as March 13, 1976 and his address as 1310 Amosland Road in Philadelphia, Pennsylvania. Id. pp. 1 and 4. Marouen stated that he first met Dina Irace five or six years ago and is now married to her with no children. Id. p. 5-6. He also stated that had been married to Dina Irace for less than a year. After discovering that the Vehicle was missing, Marouen stated that he then called wife to come and pick him up. Id. p. 9.

On March 31, 2009, an EUO was conducted of Mr. Tlili on March 31, 2009. See Exhibit "I". After confirming his date of birth, Marouen stated that he was currently divorced and in that he was previously married from approximately 1999 until approximately 2005. Id. pp. 7 and 9. Marouen stated that his brother Safouan married Dina Irace during the summer of 2008. Id. pp. 12-13.

Thereafter, a second EUO was conducted of Mr. Tlili on June 29, 2009 with his counsel present. See Exhibit "J". Marouen confirmed his date of birth as March 13, 1976 and stated the had been married, but has been divorced since 2005. Id. pp. 6 and 8. Marouen also confirmed that he resided at 1310 Amosland Road with his brother, Safouan and his sister-in-law, Dina Irace. Id.

### 3.     Recorded Statements and EUOs of Dina Irace

On November 10, 2008, a recorded statement was taken from Dina Irace. See Exhibit "K". Dina Irace stated that she resided at 1310 Amosland Road in Prospect Park, Pennsylvania.

Dina Irace stated that she had been married to Mohammed Tlili since June 4th. Id. pp. 2-3. Dina Irace stated that her mother, Margaret Maurer, and her husband Mohamed Tlili were persons in the household who drive. Id. p. 4. Dina Irace stated she drove a Chevy Impala, her mother drove a Toyota Sienna, and Mohamed drives the Vehicle and he that is the only one who drives it. Id. Dina Irace stated that Mohamed had purchased the Vehicle at an auction and Mohamed had the only key to the Mercedes. Id. pp. 5-7.

Dina Irace stated that on September 9, 2008, Mohamed told her that he was going into town to visit a friend who works on South Street. Id. p. 8. According to Dina Irace, Mohamed called her a couple hours after he left the house and said that he returned to where he had parked the Vehicle and it was missing. Id. p. 9.

At no time during the EUO did Dina Irace indicate that there were two individuals in her household with the first and last names of "Mohamed Tlili" or that Marouen was not her husband.

A second EUO was conducted of Dina Irace on June 29, 2009 with her counsel present. See Exhibit "L". Dina Irace testified that she had been married to Safouan since June 4, 2008. Id. p. 7. Dina Irace also testified that Marouen drove the Vehicle, she may have driven it once, and that she had no ownership interest in the Vehicle. Id. pp. 16 and 44. With respect to the application for insurance submitted to Mercury, Ms. Irace testified it contained several errors. For instance, Ms. Irace stated that she was not married at the time the application was submitted and that application incorrectly identified "Mohamed Tlili", a listed driver, as her spouse. Id. pp. 44 and 48-49. Ms. Irace also acknowledged that Mercury may have been misled as to which "Mohamed Tlili" was being referred to in application. Id. pp. 43.

4.     **Examination of the Vehicle**

Mercury also had the Vehicle examined by Sterling Investigative Services ("Sterling") that resulted in a report dated October 24, 2008.  See Exhibit "M".  Sterling confirmed that the recovered auto was indeed the Vehicle based on the vin number.   Upon examination of the Vehicle, Sterling noted that there was no evidence of severe collision damage and the only components removed were the headlights and taillights.  Sterling also noted that the Vehicle was equipped with a DAS which is a "rolling" or "random" code type transponder system and that only a Mercedes-Benz dealer can service such a system.   Sterling described the DAS as incorporating technology that requires a smart key that sends an infrared signal that changes with each use and that must be received and recognized by the DAS enables or disables the electronic control module.  Sterling noted that the transponder system wires were intact with no evidence of tampering.  Sterling also noted that the Vehicle was equipped with an intrusion alarm system.

Sterling's further examination of the Vehicle revealed that there is no evidence of sheet metal deformation around the door locks or handles.  A borescope examination of the door lock revealed no evidence of key impressioning, lock picking or key racking, but, damage to the window weather stripping on the right door suggested that the door could have been pried open in order to unlock the door.  Examination of the steering column shroud showed it to be intact and that the steering wheel was in the locked position with no evidence of tampering.  The steering ignition lock appeared to have been forced from its place in the dash area.  However, the wiring, which included the induction coil that is part of the DAS, was intact along with the infrared glass.  Sterling opined that the ignition system had not been defeated.  Based on the examination, Sterling concluded that a key with the correct transponder value as well as the correct infrared signal would have been needed to start and operate the vehicle.

Sterling also conducted an examination of the mechanical key and remote keyless entry fob to the Vehicle. Sterling found the key to be in conformity with the year and model of the Vehicle. Sterling concluded that the mechanical key had not been used in the past to make a duplicate key. Also, Sterling noted that there was no way to defeat the 'rolling code' transponder immobilizer system in the Vehicle by traditional theft means.

## III.   THE MERCURY POLICY

The Policy issued to Dina Irace contains the following relevant provisions.

> **We** define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in bold face italics. You can pick them out easily. Different definitions for the same word may apply for different coverage. Changed definitions will be shown in that coverage section.
>
> * * *
>
> *Insured car – your car*, a *non-owned car* . . .
>
> * * *
>
> *Named Insured-* the person identified as such in the **declarations page**.
>
> * * *
>
> *Non-Owned Car—a car* not:
>
> 1.   *Owned* by, registered or leased in the name of or furnished or available for the regular or frequent use by:
>
>     a.   *You* or *your* employer;
>
>     b.   A *resident* or a *resident's* employer; or
>
>     c.   A non-resident spouse or that spouse's employer.
>
>     d.   Any **relative** or **relative's** employer.
>
> * * *
>
> *Owned or Owner* – with respect to a *car* means the person who:

1.       Holds legal title to the *car*; or

\* \* \*

*Insured* – the persons described as insured's under each coverage.

\* \* \*

*Relative* – means a person related to *you* by blood, marriage or adoption that lives with *you*.  It includes *your* unmarried and unemancipated child away at school.

\* \* \*

*Resident* or *Residing* – means a person who inhabits the same dwelling *you* inhabit.

\* \* \*

*Spouse* – means *your* husband or wife living with *you*.

\* \* \*

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

\* \* \*

*Your Car* – means a *car* or a vehicle described on the declaration page.

---

## DECLARATIONS CONTINUED

*We*, the Mercury Insurance Company, agree to insure *you* according to the terms of this policy based:

1.       On your payment of premium for the coverages *you* chose; and

2.       In reliance on your statements in these *declarations page*.

*You* agree, by acceptance of this policy that:

1.       The statements in these declarations are *your* statements and are true:

2.       We insure *you* on the basis *your* statements are true; and

3.   This policy contains all of the agreements between *you* and *us* or any of our agents; and

4.   Ownership. *You* are sole owner(s) of *your* car.

---

## GENERAL EXCLUSIONS

---

Applicable to all coverage's except as shown below.  Additional exclusions applicable to each coverage are listed in this policy under each coverage.

1.   This policy, or any continuation, renewal with or without lapse, replacement or reinstatement with or without lapse, shall not apply;

   \* \* \*

   h.   For any *loss* or *accident* where there occurs any material misrepresentation, fraud, or concealment of material facts in the presentation of a claim.

\* \* \*

---

## SECTION IV—PHYSICAL DAMAGE

---

### COMPREHENSIVE – COVERAGE B

1.   *Loss* to *your car* or a *non-owned car*. *We* will pay for *loss* except *loss* by *collision* but only for the amount of each such loss in excess of the deductible amount. Breakage of glass, or loss caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage. *We* will pay for loss by collision to a *non-owned* car only when operated with the permission of the owner of the *car* by the *named insured* or a *relative* listed on the *declarations page*.

\* \* \*

---

### CONDITIONS

---

### POLICY CHANGES

This policy, your insurance application (which is made a part of this policy as if attached hereto), the **Declarations Page**, as amended, and endorsements to this policy issued by us contain all the agreements between *you* and *us*.  Subject to the following, its terms may not be changed or waived except by and endorsement issued by *us*.

\* \* \*

**FRAUD OR MISREPRESENTATION**

This policy was issued in reliance upon the information provided on your insurance application.  *We* may, at our option, void this policy or deny coverage for the claim within the first 60 days after the policy has been issued, if *you* or an *insured* person:

1.     Made incorrect statements or representations to *us* with regard to any material fact or circumstance;

2.     Concealed or misrepresented any material fact or circumstance; or

3.     Engaged in fraudulent conduct at the time application was made or any subsequent questioners/forms/statements were signed.

If the policy has been in effect for 60 or more days *we* may deny coverage if:

1.     There is intentional material misrepresentation or omission by an *Insured*;

2.     The material misrepresentation or omission could not have been reasonably discovered in less than 60 days;

3.     The material misrepresentation or omission would have rendered the risk unacceptable.

No person who engages in fraudulent conduct in connection with an *accident* or claim shall be entitled to receive any payment under this policy.

*We* may deny coverage for an *accident* or *loss* if *you* or an *insured* person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.  If *you* have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection

with the presentation or settlement of a claim, *we* shall be entitled to reimbursement from you for all sums paid by us as a result of the *accident* or *loss*.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L Ed. 2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Hunt v. Cromartie, 526 U.S. 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999). For purposes of determining the issues presented in this Motion, Mercury submits that evidentiary record reveals the absence of any genuine issue of material fact.

## IV.   LEGAL ARGUMENTS IN SUPPORT OF SUMMARY JUDGMENT

Summary Judgment in favor of Mercury is appropriate because the evidentiary record establishes that Dina Irace did not have an insurable interest in the Vehicle, Dina Irace breached the policy and made false and misleading representations in accepting the Policy, and Dina Irace and Marouen knowingly made false and material representations during their presentation of the claim.

### A.   Misrepresentations In the First Amended Complaint

Before addressing the merits of plaintiffs claims against Mercury, this Court must recognize that plaintiffs have made misrepresentations in the allegations set forth in the First Amended Complaint.

In the First Amended Complaint, plaintiffs allege that they owned the Vehicle and that their brother-in-law, Marouen, was using the Vehicle with their permission when it was stolen. Such allegations are simply not true. Indeed, Marouen and Dina Irace both stated during recorded statements and/or examinations under oath that Marouen was the registered owner of the Vehicle and that he used it. In addition, in applying for the Policy, Dina Irace represented that she owned the Vehicle.

Because there is no genuine issue of material fact concerning the ownership of the Vehicle and because plaintiffs have made false allegations in the First Amended Complaint concerning such ownership, summary judgment must be entered in favor of Mercury and plaintiffs complaint must be dismissed.

**B.     The Evidentiary Record Demonstrates that Summary Judgment Is Appropriate in Favor Of Mercury On Plaintiff's Complaint Because Mercury Did Not Breach The Policy**

In the First Amended Complaint, plaintiffs contend that Mercury breached the Policy in not paying their claim. Mercury submits it did not breach the Policy because: 1) Dina Irace did not have an insurable interest in the Vehicle; 2) the Policy insured cars owned by Dina Irace and the Vehicle was not her car; and 3) Dina Irace made material misrepresentations in the made in the presentation of the claim.

**1.     Dina Irace Did Not Have An Insurable Interest In The Vehicle**

Under Pennsylvania law, in order for a person to recover on an insurance policy, a valid contract of insurance must exist. Shockley v. Harleysville Mutual Insurance Co. v. Tornetta

Pontiac, 553 A.2d 973, 974 (Pa. Super. 1987).  A valid insurance contract does not exist if the policy holder does not possess an insurable interest in the covered property.  See Comm. v. Rodebaugh, 519 A.2d 555, 563 (Cmmw. Ct. 1986) *citing* Central Dauphin School District v. American Casualty Co., 426 A.2d 94 (Pa. 1981).  Moreover, an insurable interest must be an interest which the law will recognize and protect.  The effect of the loss upon an insured may not be merely indirect, remote or inconsequential.  Kanefsky v. National Commercial Mut. Fire Ins. Co., 35 A.2d 766 (Pa. 1944).

In determining whether an "insurable interest" exists, the court focuses on facts as they existed at the time the policy was issued and at the time the loss occurred.  Alberici v. Safeguard Mut. Ins. Co., 664 A.2d 110, 113 (Pa. Super. 1995).  Specifically, to have an "insurable interest" one must derive "pecuniary benefit or gain from the preservation or continued existence of property or who will suffer pecuniary loss from his destruction. . . .  It is also sufficient if the individual has an reasonable expectation of benefit from the preservation of the property." Shockley v. Harleysville Mutual Insurance Co. v. Tornetta Pontiac, 553 A.2d 973 (Pa. Super. 1987).

In Luchansky v. Farmers Fire Ins. Co., 515 A.2d 598 (Pa. Super. 1986), the Pennsylvania Superior Court expounded on the concept of insurable interest, as follow.

> The general rule is that anyone has an insurable interest who derives pecuniary benefit or advantage from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction.  A reasonable expectation of benefit from preservation of the property is thus sufficient.  It is not necessary to constitute an insurable interest that the interest be sufficient that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence.
>
> Since the requirement of an insurable interest arose merely to prevent the use of insurance for illegitimate (gambling) purposes, it should not be extended beyond the reasons for it by an excessively technical

construction. And a right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient. It does not matter in what way such benefit arises or the reason loss would occur thereby, limited presumably by dictates of public policy--if such benefit would be lost by destruction of the subject matter, that interest is insurable.

Thus, it may safely be said that a fee title is clearly not required of the insured, nor even a direct property interest, the test of exposure to financial loss being all important. An equitable title or interest or other qualified property right would clearly be sufficient . . . . And a person who had made himself responsible for property may insure it against loss.

Id., 515 A.2d at 599 (citations omitted).

In Aetna Casualty & Surety Co. v. Netz, 1994 U.S. Dist. LEXIS 7487 (E.D. Pa., June 7, 1994), the United States District Court for the Eastern District of Pennsylvania considered the issue of insurable interest in the context of a policy that insured a tractor. According to the facts in that case, Mr. Netz, while operating a tractor and horse trailer that he owned, was hit by a vehicle in April, 1989. As a result of the accident, a suit was brought against Mr. Netz, which he tendered to Aetna under a policy issued to him and Mrs. Netz. Aetna defended, but also filed a declaratory judgment action on the basis that it did not insure the tractor and horse trailer because Mr. Netz did not have an insurable interest in them. During the action, motions for summary judgment were filed.

In addressing the issue of whether Mr. Netz had an insurable interest, the District Court recited the following facts. Mr. and Mrs. Netz divorced sometime in 1984, and at that time, Mr. Netz owned a tractor insured by Aetna. As part of the divorce, it was agreed that Mrs. Netz would get the horse trailer and tractor, but, Mr. Netz insisted that both vehicles be titled in the name of Mrs. Netz's mother despite her never having possession of and did not use the trailer or tractor. The District Court concluded that the Netzs had an insurable interest in both vehicles, even though they did not hold title, because they paid for the insurance premiums, were the ones

that used and maintained the vehicles, and the Netz's were exposed to the risk of suit for any injuries resulting from the vehicles.

In the case of In re: Jacqueline Matthews, 229 B.R. 324, 1999 Bank. LEXIS 67 (Bankr. E.D. Pa. 1999), the Bankruptcy Court addressed the issue of insurable interest with respect to a person who did not hold title in a vehicle in the context of a proceeding by a creditor asserting an interest in the vehicle following a bankruptcy filing. In that case, Mrs. Matthews held title in a vehicle (due to her husband's poor credit), but she did not drive the vehicle. Following a divorce, Mrs. Matthews retained the vehicle and allowed her sister to drive it on the condition the sister drove Mrs. Matthews to work and as needed. The sister added the vehicle to her pre-existing insurance policy. The creditor argued that the sister's insurance policy was invalid because she did not have an insurable interest in the vehicle.

The Bankruptcy Court disagreed with the creditor and concluded that the sister did have an insurable interest, under Pennsylvania law as articulated in Luchansky, *supra*, because it sufficed that she had a "limited or qualified interest, whether legal or equitable, or an expectancy of advantage" in the vehicle. Id. 229 B.R. at 327. In reaching such conclusion, the Bankruptcy Court observed there was nothing in the record indicating that the sister's insurer lacked knowledge that the title to the vehicle was in the name of Mrs. Matthews and not their insured or that the sister was less than forthcoming about her interest or lack of interest in the vehicle.

Unlike the individuals found to have an insurable interest in Netz and Matthews, *supra*, the Named Insured under the Policy, Dina Irace, had no pecuniary interest in the Vehicle as she did not purchase the Vehicle and would not have to replace it if it were damaged or destroyed because she had her own vehicle. Also, Dina Irace had no equitable interest in the Vehicle

because she did not use it or have an expectancy of using it, as she had her own vehicle and Marouen had the only set of keys and drove it, and she did not maintain it.

### 2. The Policy Only Insured A Car Owned By Dina Irace And She Did Not Own The Vehicle

The Policy issued to Dina Irace provides for comprehensive coverage under Coverage B. Specifically, Mercury agreed, in pertinent part, to pay for loss, including from theft, to *your car* or a *non-owned car*. *Your car* is defined as the car identified on the declarations page. Per the Declarations Continued section of the Policy, however, Mercury only agreed to insure Dina Irace based upon its reliance of her statements as they appeared in the declarations page. Moreover, in accepting the Policy, Dina Irace agreed that the statements in the declarations page were her statements, that the statements are true and, also that she was the sole owner of the Vehicle.

The evidentiary record amply shows that Marouen owned the Vehicle and not Dina Irace. Consequently, any loss related to the Vehicle does not qualify for comprehensive coverage under Coverage B in the Policy because such loss does not involve loss of a vehicle owned by Dina Irace which Mercury agreed to insure.

### 3. Dina Irace Made Material Misrepresentations In The Presentation Of The Claim And, Therefore, Coverage Is Precluded Under The Policy And Mercury Had A Basis To Deny The Claim Based On the Fraud Or Misrepresentation Condition In The Policy

The Policy expressly excludes coverage for any *loss* or *accident* where there occurs any material misrepresentation, fraud, or concealment of material facts in the presentation of a claim. In addition, Mercury may deny coverage if Dina Irace knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

It also is generally recognized that the question of materiality is one of fact and law.  <u>See</u> <u>Gould v. American-Hawiian S.S. Co.</u>, 535 F.2d 761, 771 (3rd Cir. 1976).  However, if the facts misrepresented are so obviously important that "reasonable minds cannot differ on the question of materiality," then the question becomes one of law that a court can decide at the summary judgment state.  <u>Id.</u>  In the context of an insurance policy, whether a misrepresentation is material depends on whether the misrepresentation concerns a subject relevant and germane to the insurer's investigation as it was proceeding.  <u>Nationwide v. McHale</u>, 1998 U.S. Dist. LEXIS 7974 at * 3 (E.D. Pa., May 27, 1998); <u>Saracco v. Vigilant Insurance Co.</u>, 2000 U.S. Dist. Lexis 1685 at *18 (E.D. Pa., February 22, 2000).  "A misrepresentation will be considered material if a reasonable insurance company in determining its course of action would attach importance to the fact misrepresented."  <u>Parasco v. Pacific Indemnity Company,</u> 920 F. Supp. 647 (E.D. Pa. 1996). "A misrepresentation is also material if [it] may be said to have been calculated to discourage, mislead or deflect the company's investigation in any area that might seem to the company, *at that time,* a relevant or productive area to investigate."  <u>See</u> <u>Peer v. Minnesota Mut. Fire & Cas. Co.</u>, 1995 U.S. Dist. LEXIS 4045 (E.D. Pa., March 27, 1995).  In addition, when invoking a fraud or misrepresentation condition, the issue of prejudice is not pertinent to an insurer's defense based on fraud or misrepresentation.  <u>See</u> <u>Tuschak v. State Farm Mut. Automobile Ins. Co.</u>, 2008 U.S. Dist. LEXIS 55020 (W.D. Pa., July 14, 2008).

In <u>Tuschak</u>, *supra*, the United States District Court for the Western District of Pennsylvania considered the issue of "materiality" in the context of the a claim submitted for damage to a vehicle alleged to have been stolen.  Mr. Tuschak crashed his car into a dumpster and, instead of reporting the accident or calling a tow truck, he abandoned the vehicle and

walked home.  The next day, Mr. Tuschak reported the vehicle as stolen to the police and, also, to his insurer, State Farm.

The car was recovered.  During the time State Farm was processing the claim, and after several discussions with police officers and State Farm agents, Mr. Tuschak confessed to the police that the vehicle had not been stolen and that he crashed it into the dumpster himself.  Mr. Tuschak, however, did not inform State Farm that he had made a false report and it paid out certain sums for taxes, rental charges, and towing expenses.  Mr. Tuschak was eventually prosecuted for insurance fraud and false reporting.  He then submitted a claim to State Farm for damage to the vehicle, but State Farm denied his claim based on the Concealment and Fraud condition in the policy.  Mr. Tuschak filed an action for breach of contract and bad faith and State Farm moved for summary judgment.

The District Court granted State Farm's motion for summary judgment on Mr. Tuschak's breach of contract claim.   In doing so, the District Court concluded that Mr. Tuschak intentionally deceived State Farm and that his misrepresentations concerning the theft of the vehicle were material at the time State Farm was investigating his claim because, in part, his fraud caused State Farm to incur additional costs.

Herein, in presenting the claim to Mercury, Dina Irace represented that she owned the Vehicle.  In addition, in the Affidavit of Vehicle Theft, Dina Irace she represented that the Vehicle had been stolen after her spouse, Mohamed Tlili with a phone number of (267) 528-6299, had parked it to go shopping.  However, in obtaining the initial recorded statement of Marouen, Mercury learned that he claimed to be the registered owner of the Vehicle.  At that time, Marouen also referred to Dina Irace as his girlfriend.  During the second recorded statement, Marouen referred to Dina Irace as his wife.  At the time of her recorded statement,

Dina Irace stated that she was married to Mohamed Tlili, that Mohammed purchased the Vehicle, and that the Vehicle had been stolen after Mohammed had parked it to go shopping. In making these statements, Dina Irace never explained that there were two Mohamed Tlilis – one was her husband (Safouan) the other was her brother-in-law (Marouen) and owner of the Vehicle. Eventually, however, Dina Irace admitted that she made misrepresentations about her ownership of the vehicle and marriage to Marouen.

The representations and statements made by Dina Irace and Marouen to Mercury were made during its investigation of the alleged theft of the Vehicle and were relevant and germane. Specifically, the information concerning the ownership of the Vehicle and whether Dina Irace was married to Marouen were clearly important to Mercury because such information was pertinent to its determination of coverage and whether to pay the claim for damage to the Vehicle upon it being recovered. In that regard, the misrepresentations were calculated to discourage, mislead or deflect Mercury's investigation of the claim and, ultimately, were designed to get Mercury to pay the claim. Since Dina Irace attempted to deceive Mercury and because reasonable minds cannot differ as to the materiality of the misrepresentations made during the presentation of the claim with respect to the ownership of the Vehicle and Dina Irace's being married to Marouen, summary judgment is appropriate in favor of Mercury.

### C.   There is No Factual Support For Plaintiffs' Bad Faith Claim And Mercury's Denial Of Coverage Was Reasonable

Plaintiffs also have asserted a claim against Mercury for bad faith in its investigation and denial of the claim. Mercury is entitled to the dismissal of the bad faith claim because, as the evidentiary record demonstrates it acted in good faith in investigating the claim and denying coverage.

In order to prove bad faith, plaintiffs must show by clear and convincing evidence that

the Mercury (1) did not have a reasonable basis for denying benefits under the policy and (2)

knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Terletsky v.

Prudential Property & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994); Frog, Switch &

Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 (3rd Cir. 1999).

In Tuschak, *supra*, the United States District Court for the Western District of

Pennsylvania also addressed Mr. Tuschak's bad faith claim against State Farm.  The District

Court also granted summary judgment in favor of Mercury on this claim because it found that

Mr. Tuschak had failed to demonstrate that Mercury acted bad faith with clear and convincing

evidence.  According to the District Court, State Farm had a reasonable basis to deny Mr.

Tuschak's claim because he had been convicted of insurance fraud, had lied about the claim he

submitted, which provided a contractual basis upon which to deny coverage.

In this action, plaintiffs likewise cannot demonstrate with clear and convincing evidence

that that Mercury acted in bad faith in its investigation and/or denial of the claim with respect to

the Vehicle.  Mercury conducted a proper investigation based upon inconsistencies in the

representations and statements made by Dina Irace and Marouen when considered in conjunction

with the available documents and/or information that Mercury obtained through its investigation.

In addition, Mercury had a reasonable basis in denying  coverage because its investigation

revealed that Dina Irace did not have an insurable interest in the Vehicle; 2) the Policy insured

her car and the Vehicle was not her car; and 3) Dina Irace made material misrepresentations in

the presentation of the claim thereby invoking the Fraud and Concealment condition in the

Policy and and/or resulting in a coverage being excluded under the Policy.  Mercury also had a

reasonable basis to deny coverage because the report of Sterling indicated that a key, with the

correct transponder value as well as the correct infrared signal, would have been needed to start and operate the vehicle. Since Marouen had the only key and still had possession of it, the Vehicle had not been stolen because there was no way to defeat the 'rolling code' transponder immobilizer system in the Vehicle by traditional theft means.

Since Mercury had contractual bases to deny coverage, plaintiffs claim for bad faith must fail and summary judgment must be entered in favor of Mercury.

**D.    The Evidentiary Record Demonstrates that Summary Judgment Is Appropriate In Favor Of Mercury On Its Counterclaims**

In its Counterclaim, Mercury sets forth causes of action against plaintiffs based on Breach of Contract, Violation of 18 Pa.C.S.A. § 4117, Fraud, and Negligent Misrepresentation. Summary judgment should be entered in favor of Mercury on all of its counts in the Counterclaim because Dina Irace accepted the Policy and breached a condition to coverage under the Policy by representing that she owned the Vehicle and that Mohamed Tlili, the listed driver for the Vehicle, was her spouse while knowing that such representations were untrue or likely to mislead Mercury to issue the Policy and provide coverage for the claim involving the Vehicle.

**1.    Dina Irace Breached The Policy**

As set forth in the Declarations Continued section of the Policy, Mercury agreed to insure Dina Irace based upon its reliance of her statements as they appeared in the declarations page. In addition, per that section, Dina Irace accepted the Policy upon agreeing that the statements in the declarations page were her statements, that the statements are true and, also that she was the sole owner of the Vehicle.

Notwithstanding the representations made, the record demonstrates and Dina Irace admitted that she did not own the Vehicle when she applied for the Policy, she was not married

at that time, and the listed driver on the Policy was not her spouse.  As a result of Dina Irace

breach of the Policy, Mercury was forced to incur expenses conducting an investigation and

incurring attorney fees both as part of the investigation and in defending itself in this action.

Summary judgment, therefore, should be entered on Mercury's Counterclaim for Breach of

Contract.

### 2.   Plaintiffs Have Violated 18 Pa. C.S.A. § 4117

Section 4117 of the Pennsylvania Insurance Fraud Act provides as follows:

> (a)   **Offense defined.**-- A person commits an offense if the person does
> any of the following:
>
> \* \* \*
> (2)   Knowingly and with the intent to defraud any insurer or
> self-insured, presents or causes to be presented to any
> insurer or self-insured any statement forming a part of, or
> in support of, a claim that contains any false, incomplete, or
> misleading information concerning any fact or thing
> material to the claim.
> \* \* \*
> (g)   **Civil Action.**-- An insurer damaged as a result of a violation of
> this section may sue therefore in any court of competent
> jurisdiction to recover compensatory damages, which may include
> reasonable investigation expenses, costs of suit and attorney fees.
> An insurer may recover treble damages if the court determines that
> the defendant has engaged in a pattern of violating this section.

18 Pa.C.S.A. § 4117.  An insured violates Section 4117 by:  1) presenting false, incomplete or

misleading statements to the insurer; 2) that were material to the claim; and 3) knowingly and

with an intent to defraud."  Allstate Ins. Co. v. Kelly, 2007 U.S. Dist. LEXIS 7316 at *11 (W.D.

Pa., February 1, 2007).  Fraud is presumed where the insured has knowingly provided a false

statement.  Id.  Also, it is sufficient for an insurer to show that the insured made false statements

and that insured knew they were false when he made them.  Id.

Dina Irace knowingly and with the intent to deceive Mercury submitted a claim for damages allegedly arising out of the theft of the Vehicle and made statements during Mercury's investigation of the claim that contained and included material false and misleading information concerning Dina Irace's ownership of the Vehicle and that she was married to Marouen.  Indeed, Dina Irace admitted that she made such statements to Mercury knowing that they were false and misleading.  The representations and statements made by Dina Irace in concert with Marouen constitute actionable violations of violations of 18 Pa. C.S. § 4117.  Therefore, Mercury requests reasonable investigative expenses, costs of suit, and attorney's fees as the prevailing party in the insurance fraud counterclaim it has asserted against plaintiffs.  18 Pa. C.S. §4117(g); see also Kelly, *supra*,

### 3.   Dina Irace Made Fraudulent Or Negligent Misrepresentations Of Material Fact That Harmed Mercury

Under Pennsylvania law, a claim based on fraudulent misrepresentation can be established by showing a:  1) representation; 2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  Bortz v. Noon, 729 A.2d 555, 560 (Pa. Super. 1999).  Negligent misrepresentation requires proof of:  (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  Id. 729 A.2d 561.  In Bortz, the Pennsylvania Superior Court stated that "the elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have

failed to make a reasonable investigation of the truth of these words." Id.  The Superior Court further stated that, "like any action in negligence, there must be an existence of a duty owed by one party to another." Id.

As argued previously herein, Dina Irace made material representations known to her to be false and misleading or negligently made in the insurance application that induced Mercury to issue the Policy to her.  She also made material false or negligent representations in the presentation of the claim, known to her to be false and misleading, that caused Mercury to incur the expense of conducting an investigation and incurring attorney fees both as part of the investigation and in defending itself in this action.  Summary judgment, therefore, should be entered on Mercury's Counterclaim for Fraud and Negligent Misrepresentation.

## IV.    CONCLUSION

Despite the allegations in the First Amended Complaint, the evidentiary record establishes that plaintiff, Dina Irace did not own the Vehicle at the time she applied for insurance with Mercury or at the time it was purportedly stolen.  The record, also, reveals that she did not have an insurable interest in the Vehicle at any time.

In addition, plaintiff, Dina Irace, along with Marouen Tlili, made material misrepresentations during the presentation of the claim.  Therefore, coverage for the claim is excluded and/or the Fraud and Misrepresentation Condition in the Policy allowed Mercury to deny coverage.  Moreover, given that Mercury had contractual bases upon which to reasonably deny coverage to plaintiffs, Mercury did not act in bad faith in investigating and denying coverage.

Also, Mercury has demonstrated that plaintiff, Dina Irace, breached the Policy, violated 18 Pa.C.S.A. § 4117 and made false and/or negligent misrepresentations to Mercury.

Summary judgment, therefore, should be entered in favor of Mercury on plaintiffs claims for breach of contract and bad faith and, also, on Mercury's Counterclaims.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _____
ROBERT W. JOZWIK, ESQUIRE

Attorneys for Defendants,
Mercury Insurance Company of Florida and
Mercury General Corporation

Dated: _8-2-11_

01/7038677.v1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMMAD TLILI AND DINA IRACE | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | No. 10-CV-1747 |
| v. | : | |
| | : | |
| MERCURY INSURANCE COMPANY | : | |
| OF FLORIDA, *et al.* | : | |
| | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Robert W. Jozwik, Esquire, do hereby certify that a true and correct copy of

defendant's, Mercury Insurance Company of Florida and Mercury General Corporation Motion

for Summary Judgment was served upon all parties via electronic filing at the following

addressees :

Matthew B. Weisberg, Esquire
Prochniak Weisberg, P.C.
7 South Morton Avenue
Morton, PA 19070

 

 

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**

By:     __/s/  Robert W. Jozwik, Esquire__
          Robert W. Jozwik, Esquire
          PA #70705
          1845 Walnut Street, 18th Fl.
          Philadelphia, PA 19103
          (267)-575-2600 (t)
          rwjozwik@mdwcg.com

Date:  August 2, 2011