## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMED TLILI and DINA IRACE | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO.: 10-1747 |
| | : | |
| MERCURY INSURANCE COMPANY OF | : | |
| FLORIDA, et al. | : | |
| | : | |
| Defendants | : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Mohamed Marouan Tlili and Dina Irace, h/w, (Plaintiffs), by and through their undersigned attorneys, hereby files this Memorandum of Law in support of their opposition to the Defendants' Motion for Summary Judgment, and in support states as follows:

## BRIEF STATEMENT OF FACTS

On or about September 9, 2008, the Plaintiffs' 2000 Mercedes-Benz S430 was being operated by Mohamed Marouan Tlili. [Exh. A, Statement under Oath of Marouan Tlili, dated June 29, 2009, pp. 74, 85.] Tlili legally parked the Mercedes on Bainbridge Street, near 3rd Street, in South Philadelphia, exited the vehicle and walked several blocks to South Street. [Exh. A., pp. 85-86.] At all times material hereto, Mohamed Marouan Tlili has cognitive impairments arising from a head injury he sustained during a catastrophic car accident on Interstate 95 in New Jersey. [Exh. A., p. 19, 38.] Marouan has cognitive impairments affecting his memory, among other mental impairments. [Exh. B., Statement under Oath of Marouan Tlili, dated March 31, 2009, pp. 10-11.] At all times material hereto, Maruouan's sister-in-law, Dina Irace, and his brother Safouan, care for his needs and provide Marouan with a place to stay. [Exh. A., p. 38.] [Exh. B., pp. 9-10.] [Exh. C., Statement under Oath of Dina Irace, at pp. 9-10.]

At all times material hereto, Marouan Tlili was a "named insured" on the subject matter

insurance policy and the Mercedes was a "covered vehicle" under the policy.  [Exh. D, Insurance

Policy.]

On the date of the loss, Marouan Tlili returned to where he had parked the vehicle, and

found it to be gone.  [Exh. A, p. 95.]   He immediately telephoned 911 and filed a police report.

The Philadelphia Police Department found the vehicle approximately 10 days later, and found

the vehicle to have sustained serious damage.  [Exh. E., police report.].  On September 10, 2008,

the Plaintiffs made a claim to the Defendants under the insurance policy the day after the vehicle

was stolen.

At all times material hereto, Plaintiff, Dina Irace was insured under a motor vehicle

insurance policy issued by the Defendants Mercury Insurance Company of Florida, Inc. and

Mercury General Corporation, Inc., both doing business as the Mercury Companies, and also

referred to as Mercury Insurance Group.  [Exhibit D.]  Pursuant to the policy, Plaintiffs were

insured for loss or damage to the vehicle, as follows: Section 4 – physical damage

comprehensive – coverage B

> 1.      Lost year car . . . we will pay for loss . . . breakage
> of glass . . . theft, larceny . . . malicious mischief or
> vandalism . . . is payable under this coverage . . .
>
> 2.      We will repay you for transportation costs if your
> car is stolen . . . if your car is found and is repairable, the
> rental period ends when your car is repaired.  If your car is
> not located or is located and deemed to be a total loss, the
> rental period ends when we pay for the loss . . .

Exhibit D.

On April 10, 2008, Plaintiffs applied for this insurance policy shortly after the motor

vehicle was purchased by Plaintiff, Marouan Tlili.  [Exh F, Application for Insurance Policy.]

At the time of the application, Plaintiff, Dina Irace provided information to Defendants'

representative over the phone to obtain coverage under the policy.  Marouan Tlili never spoke

with Defendants and Defendants never inquired with Dina Irace as to her marital status on the

phone.  Irace simply advised that Marouan Tlili needed insurance and that he resided in the

house with Irace.  Further, Irace advised Defendants' application representative that the she was

marrying Marouan Tlili's brother Safouan.  [Exh. C, pp 42-43.]  At the time of the application

for insurance the Plaintiffs had no understanding of any conditions placed on the insurance

policy as a result of Dina Irace not being married to Marouan Tlili.  [Id.]  Defendants then

forwarded a completed application to Irace, who signed it without reading it and then faxed it

back to Defendants.  [Ex. C, p. 50.]  [Exh. F.]

On September 10, 2008, Plaintiffs made a claim under the insurance policy. Immediately,

Defendants were hostile to the claim and were seeking a way to disclaim coverage under the

policy.  Instead of paying the claim, Defendants began investigating the claim through their

fraud unit.  [See Defendants' Motion for Summary Judgment.]

On March 31, 2009, Defendants sought and obtained a statement under oath from

Marouan Tlili.  [Exh. B.].  At this statement under oath, Marouan explained that he had brain

damage and he further explained his memory problems to Defendants.  [Exh. B, pp. 10-12].  He

also testified that he was divorced and had never been involved in a romantic relationship with

Dina Irace.  [Id.]  This statement under oath became contentious and Plaintiff Marouan insisted

that the statement be stopped and that he be permitted to retain counsel.  [Exh. B. pp., 31-34.]

On or about September 12, 2008, Marouan Tlili provided a recorded interview to

Defendants.  [Exh. G.]  This "interview" played out more like an interrogation.  For example, the

interviewer stated that she was concerned that Marouan could not tell her what day the theft

occurred on, even after he identified the specific date when the theft occurred.  [Eh. G, 4.]  The

only possible reason for telling Marouan she was concerned about his perceived inability to advise her as to the day when the accident occurred was for the purpose of confusing or threatening him.  The Defendants' interviewer could have looked at a calendar, or recalled the day of the loss herself, considering, the interview occurred a mere three (3) days after the loss.

On November 10, 2008, Defendants obtained another recorded interview with the Plaintiff, Marouan Tlili.  [Exh. H.]  This interview was conducted by Eldon DeSenso.  During this interview, Plaintiff again advised Defendants that he had a brain injury which caused him cognitive and memory problems.  [Exh. H, p. 4.]  DeSenso then confronted Tlili in a hostile and accusatory manner.  DeSenso stated to Tlili that there was no way that the car could have been stolen based upon a forensic examination.  DeSenso did not allow Plaintiff to review this forensic examination, and did not tell the Plaintiff that the forensic examination revealed that there was stripping of the roof jamb near the right door, indicating that a tool had been placed inside the roof jamb and used to unlock the right door.  [Exh. H.]   Further, the forensic report indicated that the entire ignition system had been forced out of its designated area and placed on the dash.  [Id.]   Instead, DeSenso attempted to threaten and scare the Plaintiff and leave him feeling like the suspect in the crime.  [Exh. H, p. 34.]

On November 10, 2008, DeSenso conducted another recorded interview with Plaintiff, Dina Irace.  [Exh. I.]  One of the first inquiries made by Defendants related to her credit history.  [Exh. I, p. 6.]  Then the interviewing begins to coerce and attempt to scare Dina Irace into dropping the claim,  [Exh. I, p 18.]  While he acknowledges that the care may have been stolen by using a lift, Defendant's interviewer refers to Dina Irace and Tlili as suspicious and advises them that they could be prosecuted for fraud.  [Exh. I, p. 19.]

At all times, Mohamed Tlili is an insured driver under the policy and the stolen Mercedes was a covered vehicle under the policy.  [Exh. J., Declaration Sheet.]

To this date, Defendants have not formally denied the claim.

## ARGUMENT

### 1.      Standard of Review

Federal Rule of Civil Procedure 56(c) provides for summary judgment when there is no genuine issue as to any material fact and… the moving party is entitled to judgment as a matter of law.  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In Anderson, the court explained that the judge's role in adjudicating a Motion for Summary Judgment "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In making this determination, a court to draw all reasonable inferences in favor of the non-moving party.  See Berner International Corp. v. Mars Sales Co., 987 F.2d 975, 978 (3d Cir. 1993).  In other words, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When applying the correct standard, Defendants' Motion for Summary Judgment should be denied.

### 2.      Defendants have breached the insurance policy.

The plain language of the policy insures the vehicle under the Plaintiff's policy.

Pennsylvania law, under which this insurance policy must be interpreted, provides several well-settled principles governing the interpretation of insurance policies.  As a threshold matter, "[t]he task of interpreting a contract is generally performed by a court, rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument."  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983) (citations omitted).  Where an insurance policy provision is ambiguous, it is to "be construed against the insurer and in favor of the insured...."  State Farm Fire & Cas. Co. v. MacDonald, 850 A.2d 707, 710 (2004).  An ambiguity exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense.  Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.1997), (citing Gamble Farm Inn, Inc. v. Selective Ins. Co., 440 Pa. Super. 501, 656 A.2d 142, 143-44 (1995) (quoting Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 519 A.2d 385, 390 (1986)).

Where, however, the language of an insurance contract is clear and unambiguous, a court is required to enforce that language.  Standard Venetian Blind, 469 A.2d at 566.  A court must refrain from torturing the language of a policy to create ambiguities where none exist.  MacDonald, 850 A.2d at 711.  In addition, wherever possible, "a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions."  Little v. MGIC Indemnity Corp., 836 F.2d 789, 793 (3d Cir.1987).   "The policy must be construed as a whole, not in discrete units."  Giancristoforo v. Mission Gas & Oil Products, Inc., 776 F.Supp. 1037, 1041 (E.D.Pa.1991) (citing Luko v. Lloyd's London, 393 Pa.Super. 165, 573 A.2d 1139, 1142 (1990)).  Thus, where the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy.  Monti v. Rockwood Ins. Co., 303 Pa.

Super. 473, 450 A.2d 24, 25 (1982) (citing Adelman v. State Farm Mut. Auto. Ins. Co., 255 Pa.

Super. 116, 386 A.2d 535 (1978)).

In the instant case, the policy provides coverage to Plaintiffs, as follows:

Section 4 – physical damage comprehensive – coverage B

> 1.      Lost year car . . . we will pay for loss . . . breakage
> of glass . . . theft, larceny . . . malicious mischief or
> vandalism . . . is payable under this coverage . . .
>
> 2.      We will repay you for transportation costs if your
> car is stolen . . . if your car is found and is repairable, the
> rental period ends when your car is repaired.  If your car is
> not located or is located and deemed to be a total loss, the
> rental period ends when we pay for the loss . . .

At all times, Mohamed Tlili is an insured driver under the policy and the stolen Mercedes

was a covered vehicle under the policy.  [Exh. J.]  The policy could not be any more clear as to

providing coverage to the driver and vehicle at issue here.  Yet, to date, Defendants have not

made any payment under the insurance policy.  There is no dispute that insurance premiums

were paid and up-to-date at the time of the loss.  By refusing to pay money on this claim,

Defendants are in breach of the insurance policy.

**3.      Defendants have committed bad faith.**

Bad faith claims are fact-specific and depend on the conduct of the insurer vis-à-vis its

insured.  Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, (Pa. Super.2000).

Under Pennsylvania law, an insured may bring a cause of action against an insurer who

has acted in bad faith. See 42 Pa.C.S.A. § 8371. To recover on a bad faith claim, a plaintiff must

show both "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the

insurer knew or recklessly disregarded its lack of reasonable basis."  Klinger v. State Farm Mut.

Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir.1997) (citing Terletsky v. Prudential Property and Cas.

Ins. Co., 437 Pa. Super. 108, 649 A.2d 680, 688 (1994)).  The insurer's duty of good faith

applies to all people who are insureds under Pennsylvania law, thus, persons who are other than

owners of automobile policies may recover for bad faith refusal to settle claims where they are

insureds under the policy.  Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d

Cir.1997)

 Instead of paying the claim, the Defendants accused the Plaintiffs of submitting a false or

fraudulent claim, and represented to Plaintiffs that the claim was not a covered loss, despite there

being no evidence that the vehicle was not a covered loss.  Despite the findings of the

Philadelphia Police Department, that the vehicle was indeed stolen, stripped and abandoned, the

Defendants maintain that the vehicle contained an anti-theft transponder, making it impossible

for the vehicle to be stolen.  The report itself, clearly states that the vehicle could have been

stolen by simply loading the vehicle on to a flat bed or towing the vehicle from Bainbridge

Street, where it was parked and left by Mr. Tlili.  At most, this report creates a fact issue for the

jury to resolve as to whether the vehicle was, in fact, stolen.  The question of how, when and

whether the vehicle was stolen is an issue for trial, not an issue to be disposed of on a summary

judgment.

 Further, there is no reasonable justification for the conduct of Defendants and their

employees and agents during the pendency of this claim.  The Defendants have repeatedly

compelled the Plaintiffs to appear for examinations under oath, interviews, and made

burdensome requests for documentation related to the personal finances of the Plaintiffs.  The

conduct of Elden Desenso during the interview of Mohamed Marouan Tlili was egregious and

demonstrated a lack of objectivity and fairness when evaluating the Plaintiffs' claims.  The

"concern" expressed by Defendants' other claim investigator when Tlili could not name the day

of the loss, after he accurately recited the date of the loss, is nothing more than an effort to scare and threaten Tlili.  Defendants' investigator could have reviewed a calendar to alleviate her concern.

Defendants never made any payment under the insurance policy, despite Plaintiffs timely tender of the claim.  Plaintiffs have fully and substantially complied with every demand made to them by Defendants.  Plaintiffs have submitted numerous documents to the Defendants and have complied with every document request that has been made to date by the Defendants. Defendants have not paid any money to the Plaintiffs under the insurance policy for the claim by Plaintiffs.  Thus, Defendants have breached the insurance contract as well as committed bad faith pursuant to 42 Pa.C.S.A. § 8371, et seq., see also, Henderson v. Nationwide Mutual Ins. Co., 169 F. Supp. 2d 365 (E.D. Pa. 2001).

One final issue which clearly demonstrates Defendants' bad faith, is the egregious delay in resolving the claim.  At no time has the Defendant actually issued any denial of coverage to the Plaintiffs.  Defendants, by and through their counsel, in the instant lawsuit have certainly suggested that the claim has been denied, but there has never been any formal communication from the Defendants to the Plaintiffs that the claim has been denied and the reasons under the policy for the denial.  At all times, the Defendants have placed their interests above those of the Plaintiffs and have committed bad faith.

**4.     Plaintiffs have made no misrepresentations to Defendants.**

As set forth at length above, Dina Irace never affirmatively stated that she was married to Mohammad Marouan Tlili at any time, and further, she advised the Defendants (at the time she was requesting coverage) that she was marrying Safouan Tlili, not Marouan Tlili.  Further, Defendants argue that Irace was not completely forthcoming with regards to her relationship

with Tlili during her recorded statements and her statements under oath.  However, Defendants cannot support this argument, as Irace only answered the questions that were asked of her during the statement under oath, and she answered in a truthful manner.  By the time, Defendants requested a statement under oath by Ms. Irace, she knew that the Defendants were treating this claim with hostility, and she attended the statement and provided testimony under oath in a truthful manner and according to the rules of the process, given to her at the beginning of the statement.  There is not one misstatement, misrepresentation or fraudulent statement that can be suggested or inferred from Ms. Irace's communications with Defendants concerning the policy application or the claim.

As for Mohamed Tlili's statements, he continually advised the Defendants that he sustained a significant brain injury which causes him cognitive and memory problems.  Despite these advisions, Defendants continued to attempt to question Tlili in an adversarial, at times, in the case of DeSenso, a threatening manner.  Any misstatement concerning his marital status with Dina Irace must be examined by the court through the lens of testimony involving a person under serious medication and with serious cognitive defects which occurred as a result of severe brain trauma.   As set forth above, Dina Irace and her husband, Safouan Tlili provided Marouan with a place to stay and Dina Irace handled his day-to-day affairs, including, procuring insurance for his Mercedes Benz which was stolen.

Further, Tlili advised Defendants on more than one occasion that he was not married to Dina Irace, never had been married to her, and further, that his brother, Safouan Tlili was married to Dian Irace.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Defendants', Mercury Insurance Company of Florida, Inc. and Mercury General Corporation, Inc., Motion for Summary Judgment be denied.

**WEISBERG LAW, P.C.**

/s/ Matthew B. Weisberg
Matthew B. Weisberg
Graham F. Baird
Attorney for Plaintiffs